United States v. Sheffield Ms. Bammett Thank you, Your Honor. May it please the Court, U.S. v. Giltner, 889, Fed 2nd, 1004, 11th Circuit, 1989, instructs us that the sole interest in being protected at sentencing is the right not to be sentenced on the basis of inaccurate or unreliable information. This restitution, if paid, will result in a windfall for the victim, the IRS. The question today is whether, were all the parties agreed that the government's evidence of the restitution is inaccurate, that whether the Court can choose to impose that amount of restitution without reducing it for the known error. This case involves the fraudulent filing of tax returns by Ms. Sheffield and two other defendants. The IRS was the victim. The IRS only accepts one return per taxpayer per year. My client was sentenced last year after lengthy sentencing hearings, or sentenced last, after lengthy sentencing hearings on earlier dates. The government's spreadsheet that they introduced, and to which I did not object to its admission, but disputed its accuracy after a brief look at the 84-page, 3,450-line spreadsheet and could see duplicates. The government conceded duplicates, and the Court saw it as well. Nonetheless, the government didn't offer to review the spreadsheet for any other duplicates, but asked the Court to impose the knowingly wrong amount. The Court saw the error, but restitution was not reduced by the known error, and the Court did not resolve the error, as it's required to do under 18 U.S. Code 3664E. Are those the only errors that you pointed out to the District Court, or were there others? Excuse me. I pointed out duplicates. I saw duplicates. I even handed the spreadsheet. I looked. I saw duplicates. I did not look through the entire spreadsheet, all 84 pages and 3,400 lines on that day. So the duplicate I pointed out was one duplicate, but seeing that there were, just skimming through it, many other duplicates. But the only one that was discussed was related to one person. I've gone through the entire spreadsheet. I had nothing to do one of these afternoons. Each of these fraudulent returns with regards to the education credit, as I understand the scheme, was supposed to generate a tax credit refund of $1,000 per taxpayer, right? Yes. Okay. I went through, I think it's column G, which has the supposed amounts that were used for restitution. By my calculations, and I could be off by a couple, 72 of the people whose tax returns were submitted had refunds of more than $1,000, and the amounts over that $1,000 threshold total for those 72 amounted to $74,956. Was there any explanation of where that money came from? No, Your Honor. Not at our hearing. I would note, Your Honor, that I also went through the spreadsheet, and we pulled all the duplicates, and of course this was after the sentencing. We pulled all the duplicates. Our number showed, and there were duplicates that, there wasn't just one duplicate per person, but up to four duplicates per person, four duplicate returns for the same year. My number came to $136,000 that were given in duplicates. So, what you would like us to do is a limited remand with instructions to eliminate the duplications? Yes, Your Honor. The law in the circuit is that restitution does not have to be done with precision, since many times it can't be, specifically when dealing with value of property in mortgage fraud cases, or estimated earning capacity or kickbacks in Medicare fraud. The cases cited for this principle are those where it's not possible to be precise, as in ones with mortgage fraud where someone would need to opine on property values, or in workers' compensation fraud, they would have to opine as to earning capacity of the person. And the cases cited by the government are U.S. v. Fitrell, U.S. v. Martin, and U.S. v. Teehee. In Fitrell, which is United States v. Fitrell, 209, Fed Second, 1286, and the 11th Circuit in 2000, related to workers' compensation fraud, where an expert needed to opine on earning capacity of the defendant, which requires a reasonable estimate. The government also cites Fitrell to show that mistakes were pointed out, but the number didn't change. However, a footnote below shows that, indeed, after an error of calculation was brought to the court's attention, the ultimate sentence was for less than what the government had proffered, or the expert had testified to. United States v. Martin, 803, Fed Third, 581 in the 11th Circuit in 2015, was a mortgage fraud case where there were bundled mortgages sold into securities, which obviously would make it much more difficult to identify precise proceeds. And the United States v. Teehee, 893, Fed Second, 271 in the 10th Circuit in 1990, was a telephone trafficking in authorized access devices, something I had never heard of, where the district court awarded less than 17% of the requested restitution that the victims claimed, precisely because of the inability to determine true representation. But where the numbers are precise, the amount of restitution should be precise. And a lack of precision shouldn't mean the inclusion of known errors. Do you have a case that stands for that proposition? No, Your Honor, I do not. Although I look to, again— A case, perhaps, called common sense. Right. And as I started with the quote from U.S. v. Giltner, we look to the purpose of sentencing and what is being protected at sentencing. And if we are to believe that the right not to be sentenced on the basis of inaccurate or unreliable information is our guide, then inaccurate information should not be allowed to be the order of restitution. The amount of the duplicates is large. The windfall to the victim would be very large. And when it's known and you have a finite amount of money, it is not difficult to come to the accurate number. Well, the government has an adding machine somewhere. I'm sorry, Judge? I say the government probably has an adding machine somewhere that can just tie— I imagine they do. Although if they're as afraid of math as I am, then it's probably hidden in a closet. That's what your argument is. Yes, Your Honor. Thank you. You deserve some rebuttal time. Yes. Ms. Barrett. Thank you, Your Honor. May it please the Court, Lindsay Barron for the United States of America. This case demonstrates the crossroads of a district court's job in determining what this Court has already said is the inexact science of calculating restitution. Well, the government has the burden to prove. Absolutely. And logic says that the more finite the loss is, the greater your burden. I'm sorry, the more finite the loss is? Yes, when you can really calculate the loss. Well, and that's the issue, Your Honor. This Court has consistently said that an estimate is acceptable. And so that necessarily implies that this Court understands that there will be a margin of error. But the estimate has to be reasonable. And so the question is, what constitutes reasonable under the facts? But that's when you have to estimate. When you have to make an estimate, the estimate can be reasonable. But when there's no estimate to calculate, it has to be precise. I mean, if a charge in a bank fraud case is the improper negotiation of a fraudulent check for $1,520, and that's it, and that's what's proven at trial, that's the restitution amount. It can't be $1,600 because that's close because the amount is finite. If you have to get into issues that require approximation, right, because the loss is really unknown, and I understand that the value of property, for example, and what somebody appraised a parcel of property at and whether it was close to that appraisal, that sort of stuff makes sense. But when you've got a closed universe, why shouldn't the government be precise, especially when it comes to things like duplicates? That's not estimate. That's just a mistake. So I would like to address that issue, Your Honor, because you went through, and I think we all went through that spreadsheet, Government's Exhibit 1, which is in our supplemental appendix and did some math. So I counted 91 instances where in the same year, the same taxpayer, there are two claims that are filed. In 60 of those instances, if you look to column H, which represents the amount paid, the IRS paid that amount twice. Now, why is that? Without pulling the individual transcripts for every single one of those taxpayers, which we could not do at the sentencing hearing in real time, I don't know the answer to that. But if the IRS paid it, then it's the government's position that that should be included in restitution, which leaves us with the balance of 31 taxpayers. So these are duplicates where they're paid once, and then there's another submission, and the IRS doesn't pay, but that $1,000 does appear to still be part of the calculus in column G. So we've got, by our calculation, $31,000 that is included in that restitution order that I will concede for the purposes of this argument should not be here. But getting back to the question, and it's easy in hindsight when we've had time to go through that spreadsheet and go through this math, and let me tell you, you know it takes a while to do that, but 31,000 is less than 1%. It doesn't matter. It doesn't matter. It could be off by $10. Restitution has to be for the, unlike laws for guideline purposes, restitution has to be for the loss sustained by the victim and no more. That's correct, Your Honor. And so I want to show why it was nonetheless a reasonable estimate, and it gets to a question that you asked, Ms. Panitch. You asked, I believe it was looking at column H, there are refunds that are significantly more than $1,000. And so the indictment alleged, and Ms. Sheffield pled guilty to a scheme that included not only the tax credit, the education credit, but there were other false statements on those tax returns. And the most consistent, and this came out in Ms. Walker's transcript, which is part of the record in this case, was you'll see the refund paid for a lot of these is $1,029, $1,053, $1,055. What that was is on 1040, which is the individual tax return, there's a Schedule C if you are a business owner. And it was part of the scheme for all of these taxpayers for the defendants to put some amount of Schedule C income, claiming that they had a business, so that they would then qualify for the making work pay tax credit. Now, why would they do that? Because it makes every refund look a little bit different and a little less obvious to the IRS, so you don't have $3,400,000 refunds. You have 3,400 refunds that are all a little bit different. Now, that was not included in the restitution argument. And the district court, we, the government. What do you mean not included in the argument? It was not included in the restitution order. So the government. Well, what happened to the amounts over $1,000? They were in column G. And I don't believe so, Your Honor. I believe those were in column H. Now, there are instances where you do see more than $1,000. There are a few instances where there's $2,000, $3,000. And that's because the education credit was claimed for more than one person. So, for example, if the taxpayer had a dependent, you would see that education credit claimed for multiple people. And so if there are instances why it's more than $1,000, I believe that. So, like, for example, if you look at line 286, the tax credit is $950. That's actually less than $1,000 because it's not an automatic $1,000. It's up to $1,000. The way the credit works is if you spend $4,000 or more in a given tax year on education, on qualified education expenses, you can get up to $1,000. So if the amount claimed on education expenses is less than $4,000, then you get some prorated amount of the $1,000. So that's why sometimes it's less, but sometimes it's more because it's claimed for more than one person. But the restitution order, and the district court made clear it was basing it only on the education tax credit. It didn't even take into consideration. But those – you have the spreadsheet. I forgot to bring it.  I do, Your Honor. Doesn't Column H have, by my count, over 70 amounts that were over $1,000? Column H does, and that's my point. Column H is – I'm sorry. Column G does not? I'm not seeing it in Column G, Your Honor. At all? There are instances where it's $2,000. Yes, that's over $1,000. Right, and the explanation for that is that for an individual taxpayer, if they've got more than one person, the way it's supposed to work, if I'm a mom and I've got three kids in college, I can claim it for each one of those. And that happened in this case where the education – My concern is this. The explanation you've given today makes sense. None of that was presented to the district court. The AUSA presented a naked spreadsheet to which there was no objection, but then there was no explanation. Like, hey, here's why this works. Here's why this amount over $1,000 should be counted. Here's why this is correct. Here's why this is not a duplicate. And what the district court said to Ms. Sheffield's lawyer was, you tell us where the duplications are. And do you have a list? And given that the lawyer was given the list at the hearing, the lawyer didn't have a list. She was given the spreadsheet before the hearing, Your Honor. We didn't produce it for the first time at the hearing. How early before the hearing? I don't remember that, but I know I had emailed it beforehand. How many entries were on the list? A lot. A lot. 3,400 and something. That's correct, Your Honor. That's a list that takes a while to go through. It does, Your Honor. Well, and it doesn't really matter because you conceded the burden of proof is on the government. Absolutely, Your Honor, which raises the question of what is the district court supposed to do in the moment? Counsel, let me ask one little thing about burden of proof. Yes, Your Honor. If this were a civil case, the spreadsheet would not have been introduced into evidence at all. If it's a civil case, then have somebody authenticate the spreadsheet and explain all the calculations, probably a CPA or somebody. In a criminal case, the government doesn't carry out a burden of proof anymore like that in finite cases where you can calculate the amounts. It doesn't make much sense that in a criminal case where liberty is at stake, we do a little bit of chip shot and blame it on the judge. The judge swallowed up what the prosecutor said. In a criminal case, we wouldn't stand for it. Respectfully, Your Honor, I disagree that this would not have been admissible in a civil case, and here's why. This was a summary exhibit under Rule 1006. What it was, the defendant in a reply brief says it was a summary of the government's argument, but it was actually a summary of voluminous records, 3,449 individual tax returns. What I'm saying is in a civil case, you would have put the person who prepared the document, not the assistant U.S. attorney, an expert witness on the witness stand and authenticated it. If the defendant had not stipulated to its admission, that's exactly what I would have done to lay the foundation to show the court that it is a 1006 summary, but that issue was obviated here. Now, the defendant was not stipulating that it necessarily means that the restitution should be that amount, but the stipulation that it is a summary of the tax records, that comes in, and so that obviates the need to call the witness to summarize the underlying records. But to get back to the question of what is the district court supposed to do in real time and the burden shifting, so the government absolutely has the burden of proof, and what this court has said is that means that, you know, unlike in Washington, where the government just stands up and stipulates, we have to offer something, and Judge Jordan, you wrote the opinion in Washington, and you said in that case, there was no summary chart, there was no spreadsheet, there was nothing, there was just the government saying there were 250-plus victims. Well, in this case, we had a 1006 spreadsheet, and that was sufficient evidence for the district court to say, okay, the government has met its burden. Now, at that point, the burden of proof always stays on the government, but the burden of persuasion, and there are two cases cited in our brief, it's Stone out of the Fourth Circuit and Bain out of this circuit, which suggests that once the government has met that burden of establishing by a preponderance of the evidence that this is a reasonable estimate, if that number is wrong, if there's an offset to be identified, then the defendant has to make it clear, because put it in the perspective of the judge. Judge Cohen has to make a real-time decision here. Is this a reasonable basis or not? Let me interrupt just a minute. I realize the Fourth Circuit said that, but I thought our circuit in Huff said that the burden of proof, even with respect to offsets, is on the government. Page 1247 in the right column toward the top, I'm quoting, as part of its burden to prove the restitution amount, the government must deduct any value that the defendant's fraudulent scheme imparted to the victims. That's kind of like an offset. In fact, a mere mathematical calculation like the issue here, duplications, it seems to me it's much easier for the government to produce evidence about than as opposed to value to the victim. Well, Your Honor, I'd like to cite Bain, which was also from the Circuit Court 2013. And this was the court remanding on that exact issue. It was a health care fraud case in which the issue was, were there medically necessary services that were improperly included in the restitution? And this court said, on remand, Bain must offer evidence about what goods or services he provided that were medically necessary and the value of them in order to receive an offset. And so I think what the defendant is asking is that all they have to do— That's when the evidence is in the other party. I'm sorry, Your Honor? That's because the evidence is in the other party. Well— As opposed to the government. This is all in the government's possession. Well, and I will say, Your Honor, that we, for the sake of this argument, and without pulling the individual transcripts for all taxpayers, we will concede that there are 31 entries that, you know, may have been duplicates, may have been erroneously in there, but that, again, we're reviewing to determine if the district court's estimate was clearly erroneous. And there was only one example identified at that hearing that was clear error. But even if all 31 had been identified— If there's just one. If there's just one. That's reversible error if the issue is preserved. Right? Your Honor, I— If you had conceded, let's say Ms. Sheffield's lawyer at sentencing says, entry number 220 is a duplicate of 221, and you look at it and you say, we agree that that one should be reduced. And the district judge says, no, not going to reduce it. I'm ordering that too. That's reversible error, even though it might only be a $50 difference, right? Well, I have to say that, honestly, if I had known ahead of time that there were 31, I would have asked for the lower amount, absolutely. But the problem is that it's your burden to figure out whether or not there are duplicates going forward. I understand, Your Honor. I do just want to point out that in the Futrell case, that was a known error in the restitution order. Both sides conceded that the restitution— What did you say? In Huff, it was a known error? I'm talking about Futrell. In Huff too. I believe Huff was the issue of whether—I think it was there was a Merrill Lynch victim amount that should have been included. But I'm talking about Futrell, which is a case this Court affirmed the restitution order. And in that case, there was a known error. So the restitution was based on gross income instead of net income. And there didn't seem to be any dispute that that was wrong. The Court nonetheless affirmed, because, again, we're looking with the benefit of hindsight, in the moment, at the hearing, was there sufficient evidence on which the district court could say this is a reasonable estimate? And so in this case— $100,000 and said, I'm rounding off it's a reasonable estimate because there might be some duplicates. You wouldn't be able to successfully appeal. We would not have appealed. In fact, we know that the restitution— No, no, forget whether you would have. If you did appeal, you'd lose, even though the district court incorrectly denied you, denied the IRS $100,000 in restitution. If I may answer— Because it's close enough. Your Honor, my time is up. May I answer the Court's question? Sure. We know that the district court's number was low. Remember back to the issues that were raised in the sentencing memo. We had asked for restitution to include the other fraudulent claims, this Schedule C income. But you haven't crossed-appealed that issue. No, we haven't. But that's what I'm saying, Your Honor, is that we know the district court's number was wrong. It doesn't render it an unreasonable estimate when reviewed for clear error. Thank you. What do you say to that last point that the government just made? The point that the restitution amount is low because the district court did not include at all this other little different fraud. Well, Judge, this started as a loss spreadsheet. This is how the spreadsheet was initially sent to me as a loss spreadsheet for co-defendants, for the co-defendants. And I didn't realize this was the spreadsheet that would be introduced until we walked into court that day. And so I had not looked for duplicates before. I'm sorry, Judge, I lost my train of thought. If the Court could repeat its concern. The government argued that the restitution amount is low because it did not, you remember, okay. Yes, thank you, Judge. Well, actually, so the restitution amount was, this went to loss amount. And so the loss amount is what was used as restitution. But we know that loss amount contemplates actual and contemplated loss. And restitution, there's no doubt that restitution should only be actual loss. So it would necessarily be a lower amount. So the fact that the original amount included things that it shouldn't have included, and so it brought it to the corrected loss amount that the court adopted, does not mean it was given a lower number in order to not have to look at the specific entries. The fact that it was given a lower number reflected what the loss amount should have been. And so restitution wouldn't most of the time be lower than the loss amount because the loss amount includes. Well, the loss amount drives the guideline. Correct. And restitution is a whole different issue. Correct. Yes, Your Honor. They get confused all the time. Yes, Your Honor. As someone who has confused it myself, yes, I agree. I would go back and distinguish Futrell. The government said that the amount was affirmed. Yes, the amount was affirmed, but only after the court had reduced it by what we could only surmise was the known error that the government brought up, that the government realized. There was gross income versus net income, and it should have been net income, not gross income. So the numbers actually went down. The court imposed restitution of $100,224.82 instead of the requested $108,844. So even though the amount was affirmed, the amount had been reduced after the testimony about the error. It wasn't that the error was discovered after the sentencing. I'd also like to distinguish Bain. In Bain, this was a health care kickback scheme. And as Your Honor aptly pointed out, the reason the burden shifted to the defendant in that claim was because the defendant would be the only one who could say what actual services were legally rendered to the vendors versus what was unlawful. And so in that case, the entirety of the argument rests on whatever the defendant could put up. In this case, these were the government's numbers the entire time. This is the IRS providing these numbers, and there's no reason for them not to. Once a duplicate was seen, there was no reason that the court couldn't take or the government couldn't take the 90 days that it had from a restitution hearing. We're talking about real time, but in reality, the court has 90 days to come to a restitution, to have a restitution hearing and come to an amount. So they're not limited to what happens on that day if there are concerns that there are mistakes. And once the court learned that there was a mistake conceded by the government and provided by the defense, it should have stopped and recalculated. I think we have your case. Thank you. You were court appointed. We appreciate you having taken the assignment. Thank you. Weeks versus the United States.